UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| SCORDATO, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | No. 18 CV 50264 |
| v. ) | Judge Iain D. Johnston |
| ) | |
| KINNIKINNICK SCHOOL DISTRICT, ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

The plaintiffs' motion for a stay put order [4] is granted. However, the Court determines that the minor student's "then-current educational placement" is the placement set out in the student's Individualized Education Program dated February 5, 2018, which calls for the student to spend the 2018-19 school year at Hononegah High School, rather than remain at Roscoe Middle School as the plaintiffs now seek.

**I. INTRODUCTION**

The parties participated in a hearing on the plaintiffs' motion for a stay put order on August 14, 2018. In addition to testimony from the parents and educators, the Court also received documentary evidence, which the parties have since docketed. *See* Dkts. 14–19. As gleaned from that evidence as well as the parties' pleadings and briefs, the following facts appear to be undisputed except where noted.

P.S. is the 14-year-old son of plaintiffs Peter and Angela Scordato. During the 2017-18 school year he attended Roscoe Middle School. P.S. has intellectual disabilities that qualify him for special education services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* Under the IDEA, P.S. is entitled to an Individualized Education Program, which is reviewed annually.

The annual review of P.S.'s IEP due for 2018 occurred on February 5, 2018. P.S.' parents attended along with a team of educators including those who interact with P.S. at Roscoe Middle School as well as special education teachers from Hononegah High School. Educators from the high school attended because under state law, upon reaching age 15 the high school district in which a student with disabilities resides becomes financially responsible for the student's education. 105 ILCS 5/14-6.01. P.S. will turn 15 during the 2018-19 school year. The middle and high schools that serve his area are in different school districts: Roscoe Middle School is in Kinnikinnick School District 131, while Hononegah High School is in Hononegah Community High School District 207.

The written IEP distributed at the end of the February 5, 2018, sets out the programs and services that P.S. will receive until the next annual assessment comes due February 4, 2019.

Dkt. 15, Ex. 1A.  It calls for P.S. to attend Hononegah High School during the 2018-19 school year, which began August 15, 2018.  *Id.* at 14-16.  The February 5, 2018, IEP notes that while educators from both the middle and high schools recommend that P.S. attend Hononegah High School, his parents do not believe he is ready and want him to stay in middle school.  *Id.* at 27-28.  The IEP includes a notice to parents that services would be provided under the IEP within ten days of its issuance.  *Id.* at 30.  Parents are entitled to request a due process hearing to challenge an IEP, and one of the parents acknowledged on the IEP that he or she had been provided with a copy of the Explanation of Procedural Safeguards in which the right to a due process hearing is detailed.  *Id.* at 2.  The parents never sought a due process hearing within ten days of the issuance of the February 5, 2018, IEP.

The following month the parents requested another IEP hearing, which was held March 22, 2018.  The parents again expressed their concern that P.S. was not ready to attend high school and asked the team of educators to change their recommendation.  Dkt. 15, Ex. 2A at 26-27.  However, no changes were made to the programs and services to be provided to P.S. through February 4, 2019, including the plan that P.S. attend high school during the 2018-19 school year.  *Id.*  The parents received a copy of the IEP on March 22, 2018, *id.* at 22, and that same day filed a written request for a due process hearing, Dkt. 15, Ex. 3A.  The due process hearing occurred before an impartial hearing officer for the State Board of Education, Janet Maxwell-Wickett, on July 23, 2018.  Dkt. 17 at 3.  On August 2, 2018, Ms. Maxwell-Wickett issued a final administrative decision denying the parents' complaint based on her rejection of their argument that providing programming and services to P.S. at Hononegah High School would violate his rights under the IDEA.  Dkt. 17.

Following these state administrative proceedings, the parents then filed this suit.  They also filed what they entitled an "Emergency Motion for Preliminary 'Stay-Put' Injunction."  Dkt. 4.  In the motion, they seek an order under 20 U.S.C. § 1415(j) to "keep P.S.'s free appropriate public education at and through Roscoe Middle School . . . during the pendency of any proceedings referenced in 20 U.S.C. § 1415(j), including this civil action."  Dkt. 4 at 1.  The parties consented to this Court ruling on the plaintiffs' motion.

## II. ANALYSIS

Under 20 U.S.C. § 1415(j), "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  Thus, under that section P.S. is entitled to stay at his "then-current educational placement" while this case remains pending.  The statute does not define the phrase current educational placement, but the Seventh Circuit has adopted the fact-driven approach used by other circuits.  In *Bd. of Educ. of Community High School Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548-49 (7th Cir. 1996), the Seventh Circuit held that "educational placement" means "more than the actual school attended by the child and something less than the child's ultimate educational goals" expressed "in the abstract goals of a child's IEP."  *Dist. No. 218* involved a student expelled from his original school, and the court held that for expulsions "a change of school is interpreted as a change in placement," because a school's ridding itself of a difficult disabled student violates the original purpose of the IDEA.  *Id.* at 548.  When the facts at issue involve "children [] moved

from a school because of external factors, rather than their own behavioral problems," the approach of other circuits that the Seventh Circuit adopted was that "a change in 'placement' was limited to 'certain fundamental decisions regarding . . . the most appropriate type of educational program for assisting a child . . . with a handicap.'" *Id.* at 548 (quoting *Concerned Parents & Citizens for the Continuing Educ, at Malcolm X v. New York City Bd. of Educ.*, 629 F.2d 751, 753-54 (2d Cir. 1980)). Because P.S. was not expelled from Roscoe Middle School, this Court must look at the facts beyond just a change in school buildings to determine his current educational placement at the time he filed suit.

To begin, the Court notes that P.S.' parents did not seek a due process hearing within ten days of the issuance of the February 5, 2018, IEP. According to the IEP's own terms, the school would begin providing the programs and services outlined in that IEP within ten days. Had the parents sought a due process hearing under the Illinois School Code, then under the school code's own stay put provision, the programs and services received under P.S.' previous IEP (which was not provided, but which was presumably from 2017 and called for P.S. to receive his program and services at Roscoe Middle School) might have continued. *See* 105 ILCS 14-8.02a(j). But in the absence of a request for a due process hearing, P.S. began receiving his programs and services under the February 5, 2018, within ten days of that date. Dkt. 15, Ex. 1A at 30. The significance of this is that even though by filing this suit he has stayed implementation of the March 22, 2018, IEP, the February 5, 2018, IEP remains in place and under it, P.S. is to receive his programs and services for the 2018-19 school year at Hononegah High School. Thus, even setting aside the March 2018 IEP, under the February 2018 IEP, P.S. is already set to transition to high school, not stay in middle school.

This is not to say that the determination of a student's then-current educational placement looks solely to a student's current IEP. Rather, under the Seventh Circuit's guidance the inquiry must be fact-driven, and must take into account the student's educational goals. According to the February 2018 IEP, the educational goals for P.S. include preparing during the coming years for eventual employment after graduation, or for post-secondary education or training. *See* Dkt. 15, Ex. 1A at 14. As explained in the IEP, these services are available at Hononegah High School, such as a vocational internship program in which P.S. might find the opportunity to work at the YMCA or Boys & Girls Club to pursue his expressed interest in the field of fitness. *Id.* Granted, the IEP doesn't call for P.S. to begin interning this coming school year, but the staff members from both the middle and high schools believe that based on P.S.' age, he is ready to transfer to the school where he can work towards such goals.

In addition, school staff testified that three[1] of P.S.' peers from middle school with whom he interacts are either moving on to high school or already have, and according to the IEP the students remaining at middle school are mostly non-verbal. Dkt. 15, Ex. 1A at 28. According to

---

[1] The parents testified that one of P.S.' peers who is also placed at Hononegah High School sexually assaulted P.S. during a get together at the peer's home away from school or any school event. It is undisputed that, at the time, P.S.' mother reported only that the other student was too hands-on and asked that they be kept apart though they would remain in the same class, and that the school did so. During the hearing on the stay-put motion, a member of the high school staff testified that given its larger size, it would be common practice to keep such students in separate classes. Given that the parents have never requested any greater protection, and the limited nature of the testimony offered during the hearing, for purposes of this motion the Court assumes the number of P.S.' peers at Hononegah High School to be 3, rather than 4, but has no occasion to opine on the issue any further.

testimony during the hearing, Hononegah High School will provide all of the same programs and services to P.S. that Roscoe Middle School provided, including the same sign interpreter who has worked with P.S. at the middle school. Thus, the IEP appears to create a continuum of programs and services, including some of the same students and staff. In addition, the curriculum will be better suited to begin preparing P.S. for life after high school.

Nevertheless, P.S. parents testified that they do not believe P.S. is ready to receive his programs and services at Hononegah High School. His father's specific concerns included P.S.' safety, including that P.S. communicates with his middle school teacher using sign language but the high school staff will receive only basic sign training, Dkt. 15, Ex. 1A at 10, and that P.S. may become anxious and withdrawn amid the bigger students who attend high school. His mother testified that she anticipated difficulties transitioning to high school because the staff there does not yet know P.S., that P.S. will not communicate in sign language with persons that he does not yet know, that everywhere he goes he needs to get used to the new place, and the people in his new environment need a chance to get to know him. The parents recounted a couple of P.S.' visits to see the high school and described him as being overwhelmed. During one visit he pushed a teacher into a room and closed the door on her, though the teacher described the incident as playful.

The parents also submitted as evidence a letter from P.S.' pediatrician, who reports that P.S. always has trouble transitioning, and that P.S. should remain in middle school based on his "understanding that the school district wants to move [P.S.] to the high school" and that P.S. and his parents "did not get much lead time to try to ease him into the transition this past year, as that decision was made relatively recently." Dkt. 19 at 1. That letter is dated August 13, 2016. *Id.*

In fact, the decision was made February 5, 2018, and became effective ten days later, which undermines the basis of his doctor's assertion that P.S. had inadequate time to prepare for high school. In fact the districts arranged for P.S. to attend extended school year services over the summer at Hononegah High School so that P.S. could get to know the school, some its staff, and some of the students, but that the parents refused and ultimately obtained an agreement to allow P.S. to remain at Roscoe Middle School for the summer. According to the evidence and testimony, for P.S. anxiety accompanies every transition and new situation. The parents were offered the opportunity to spend the summer easing P.S. into high school, but eschewed it. In addition, the parents submitted no evidence of any steps they took since February 2018 to prepare P.S. for his eventual transition to high school, and offered no testimony of what steps they would take if P.S. remained in middle school for another school year. In addition, a Hononegah High School staff member testified that the high school can handle and address overwhelmed students. If it does not, the parents can request another reevaluation, as they did in March 2018.

The plaintiffs argue that under the Seventh Circuit's decision in *Casey K. v. St. Anne Community High School*, 400 F.3d 508 (7th Cir. 2005), P.S.' then-current educational placement is Roscoe Middle School. Like the situation here, *Casey K.* involved a student who was turning 15, and so his high school was taking over responsibility for his IEP from his elementary district, which like here were two separate districts. *Id.* at 510. The elementary school's IEP called for him to receive programs and services at a "therapeutic" private school, but upon turning 15 his

high school issued a new IEP that called for the student to receive his programs and services at the high school, rather than continuing at the private school. *Id.* The parents challenged the new IEP, and after filing suit the district court determined that under the stay put provision of the IDEA the student should remain at the private school. *Id.* The high school district appealed the district court's determination of the student's then-current educational placement. The Seventh Circuit affirmed, but did so based on the school district's concession that if the elementary and high school districts were considered a single district, the student would be entitled to stay at the private school designated in the elementary school district's IEP. *Id.* at 511. That case is therefore distinguishable because the court in *Casey K.* had no occasion to engage in the fact-driven inquiry set out in *Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d at 548-49. It is further distinguishable because in that case the elementary school district's IEP called for the student to receive programs and services at the student's private school, while in this case the elementary school district's IEP called for P.S. to receive his program and services at Hononegah High School.

## III. CONCLUSION

The Court does not minimize the parents' concerns, or their vigorous pursuit of what they believe to be best for their son. But the sole issue before the Court at this early stage of litigation is identifying the then-current educational placement of P.S. This Court finds that Hononegah High School is the then-current educational placement, consistent with the plan set forth since February 5, 2018, in P.S.' current IEP. The Court reaches that determination based not solely on the building where P.S. receives his services, but also the types of programs and services he will receive and how they meet the goals set out in the February 2018 IEP. Accordingly, though the plaintiffs are entitled to a stay put order as sought in their motion [4], the then-current educational placement to be maintained is P.S.' placement at Hononegah High School.

Date: August 22, 2018         By: _____
                                  Iain D. Johnston
                                  United States Magistrate Judge